No. 16,826.

JOHNS *v.* TESLEY ET AL.

(250 P. [2d] 194)

Decided September 29, 1952.   Rehearing denied November 24, 1952.

Mr. DARWIN D. COIT, Messrs. LEE, BRYANS, KELLY & STANSFIELD, for plaintiff in error.

Messrs. WOLVINGTON & WORMWOOD, Messrs. FOARD BROTHERS, Mr. A. X. ERICKSON, Mr. DON B. OLIVER, Mr. W. H. ERICKSON, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error Johns, codefendant in the trial court, prosecutes this writ of error to review a joint

judgment against him and other defendants in the sum of $20,515.50, plus interest in the sum of $1,001.84, entered on a jury verdict at the close of a trial for damages resulting from a three-car automobile accident which occurred on the evening of July 22, 1950, on U. S. Highway Nos. 85-87 eight miles south of Colorado Springs. Defendant in error Tesley was plaintiff and Johns, Briney, Jr. and Briney, Sr., were defendants.

Johns, as points relied upon, specified in substance, error on the part of the trial court in overruling his motion for directed verdict at the close of plaintiff's case and renewed at the close of all the evidence, on the grounds that there was no evidence to sustain any allegation of negligence against him; that the carelessness and negligence of defendant Briney, Jr., as driver of another automobile was the sole proximate cause of any and all damage to plaintiff; that there was no evidence showing that plaintiff's car was struck in the rear by Johns' car, or that plaintiff was in the car or otherwise struck by Johns' car; that the court erred in refusing to admit testimony to the effect that Briney, Jr., had pled guilty to careless and negligent driving and driving on the wrong side of the road in a case growing out of this traffic incident; that the trial court erred in refusing certain tendered instructions; erred also in the giving of other instructions; and in the submission of a form of verdict upon which the jury could find against Johns alone without Johns' counsel being advised by the court that such a form of verdict was going to be submitted to the jury.

Johns was injured personally and suffered damages to his automobile, almost to the full value thereof, for which he cross claimed against codefendants Briney, Jr. and Briney, Sr., the owner of the car driven by Briney, Jr. At about eight o'clock P. M., a large Weicker moving van or truck, the over-all length of which was about fifty-eight feet, was traveling south on the west lane or side of the highway at about forty-five miles per hour

and had followed a car from 150 to 200 feet ahead of it for about four or five miles. Briney, Jr., driving a Cadillac automobile, being a car used for family purposes and owned by his father, Briney, Sr., had been driving south behind the Weicker truck and had made two attempts to pass the truck and finally accelerated his speed to fifty or fifty-five miles per hour, and turned to his left over on the east side or lane of the highway in attempting to go around the truck. As Briney's car was along side the truck he met plaintiff Tesley's car head on. Tesley was in his right lane of traffic and had just passed Johns' car some 150 feet before meeting the truck. The right side of the front of Briney's car struck head on the right front end of Tesley's car; apparently went on and struck Johns' car that was following; and then landed in the barrow pit on the east side of the road and behind the Johns' car. There were three almost instantaneous crashes. The first crash was the car of Briney, Jr., on the wrong side of the road driving head on into the Tesley car; the second crash was that something hit the side of the truck, leaving a hole in the truck and a dent in the gas tank; the third crash apparently was the result of Briney's car striking the front end of Johns' car, although it is alleged and claimed that the third crash was the result of Johns' car driving into the rear end of Tesley's car after Tesley had been hit by the car driven by Briney, Jr. As appears from the record, Tesley was thrown from his automobile on the first impact with the Briney car. He was found lying on the ground and had suffered injuries, although it can be gleaned from the evidence that much of his injury was an aggravation of already existing injuries.

The driver of the truck kept on his side of the road and brought his truck to a stop some 200 feet south of the point of the collisions. He was in no way involved in the accident, and as a disinterested witness, testified that instantly after the first crash he felt the impact or second crash on the side of his truck; and he further testified as

as to the general physical conditions as he saw them immediately on coming back to the scene of the point of collision.

According to Johns' testimony he was driving north from Pueblo in a practically new Cadillac car, accompanied by his wife and a Mr. Kester, in a more or less continuous line of traffic going north in the same direction he was traveling, the extra traffic apparently was the result of people leaving a political convention which had closed shortly before at Pueblo; he was traveling about forty-five or fifty miles an hour, or the varying speed of the line of traffic. At about the time he observed the clearance lights on the approaching truck, an automobile, which it developed was plaintiff Tesley's car, passed him on his left and turned back into his right lane of traffic some 100 to 150 feet ahead of Johns' car, and at about that instant Johns heard the crash and saw a swirl of lights. He immediately applied his brakes and remained at all times in his right line of traffic. He and the two passengers with him testified to the effect that they saw the swirl of lights and a lot of chrome coming toward them which hit them head on, and they all testified that it was Briney's car. Johns, after laying down about twenty feet of skid marks, brought his car to a stop in his lane of traffic about twenty feet behind the Tesley car which was then located diagonally across the road with the rear end over the center line or west side of the highway. After Briney's car crashed into the Johns' car, it then went on over into the barrow pit. Kester, who was riding with Johns, testified that at the moment of the crash and the swirl of lights, he was looking forward and saw Tesley's car thrown two or three feet up in the air; that a dark object was thrown out of it; also various articles of merchandise or samples that Tesley was carrying were scattered over and about the scene of the accident. That Tesley was thrown out of his car by the first impact with the Briney car seems undisputed. Tesley was undoubtedly the dark object that

Kester testified as having seen come out of the car on the first impact.

Harry Robert Sayre, called as a witness on behalf of Johns, testified that, accompanied by his wife, he was driving his own car from Pueblo, and that on the night of the accident, he had passed Johns twice and then finally he, Sayre, pulled off to the side of the road in order to let his wife drive awhile, and after that they were about four or five cars behind Johns all the way to the point of the accident, and they never drove over forty-five miles per hour on account of the traffic; he also testified that when he went to the scene of the accident, 'the Tesley car was approximately fifteen feet ahead of the Johns car and faced in a northeasterly direction; that it was barely over the middle line running down the highway; and that the Briney car was ten or fifteen feet to the rear of the Johns car in the barrow pit.

There is no dispute, or denial, that Briney, Jr., was driving fifty or fifty-five miles an hour on the wrong side of the road, and that in attempting to pass the truck, he met Tesley's car head-on on Tesley's side of the highway. Whatever happened instantly was set in motion and touched off by Briney's negligence, and it must be positively accepted as being the sole and proximate cause of all the damage resulting from the companion crashes. Nothing in the testimony suggests that in the split second of time available to Johns, he did, or failed to do, anything other than what an ordinarily prudent person would do under like circumstances. It is not even suggested that he failed to do anything that he could have done in time to avert any disaster to himself.

It is nowhere contended that Johns had anything whatever to do with the first or original crash between the Briney and Tesley cars. The attempt to fasten liability on Johns is the claim that Johns negligently drove into the rear end of the Tesley car after it had been struck by the Briney car, and property damage thereby resulted to Tesley's car. We cannot overlook the fact that

the second crash to which the disinterested driver of the truck testified, did not, and could not have involved Johns in any sense of the word, because he had not reached that point, and the second crash, or the impact on the side of the truck, was almost simultaneous with the first crash, and it would appear that since it is shown by the testimony that the Tesley car was lifted off the ground some two or three feet and thrown to the west, the damage to the rear end of the Tesley car was caused by it being thrown against the moving truck.

At the close of plaintiff's case, which developed nothing whatever as to any liability of Johns, the trial court, in considering Johns' motion for a directed verdict, had the following to say:

"The Court: In this case the burden is upon the plaintiff to show the negligence of the defendant, Johns, and that, by reason of that negligence, he suffered some injury or his property damaged.

"There isn't any evidence that shows the Johns car struck the rear end of the Tesley car. True, it is impossible to tell how it happened. There isn't any question but what the first two cars had a very serious accident. There is a truck involved. There is evidence of some scratches and dents on the truck. We are merely speculating as to whether the Johns car struck the Tesley car. The only evidence we have, so far, is that of Johns, who says he did not strike the rear of the Ford. There is some positive evidence of Mr. Briney, Jr., who had just had a serious collision in front, who has the opinion that his car did not collide with the Johns car.

"So, it seems to me, it hasn't been established by evidence that the Johns car had anything to do with this accident as far as the plaintiff is concerned. There is, in this case, cross-claims between Johns and Briney in which Johns claims he was struck by the Briney car. So, it seems to me, that the case in chief resolves itself into a contest between Tesley and Briney; that the cross-

claim raises the question of damages between Briney and Johns.

"So, I think the motion is good." ·

However, after the trial court had correctly analyzed and appraised the evidence, as is shown by his statement, counsel for plaintiff moved that he be allowed to reopen the case and call the truck driver—who would be there the next morning—as a witness, claiming that the truck driver was an eye witness and that he would testify that the Johns car hit the Tesley car and that he saw it. The truck driver was on call as a witness the next morning by Johns.

At the opening of court the next morning, and in the presence of the jury, counsel for plaintiff stated: "Mr. Erickson: May it please the Court, I find that the driver of the truck in question did not see the actual collision and only heard noises, and therefore I can't say that he saw which car hit which car. The Courtesy Patrolman, however, informs me that he has some additional facts that he has found since he was here and I would like to put him on for just one or two questions." Following this, he recalled the courtesy patrol officer for some further brief examination, because, on his prior examination, he did not have his notes or memorandum that he made at the time as to distances, and he was allowed to testify. This closed plaintiff's case, and counsel for Johns renewed his motion for directed verdict which should have been sustained; however, the trial court reserved his final ruling until the end of the case, which meant that defendant Johns then proceeded with his defense, and there is nothing to be found in the testimony on behalf of the defense either on direct or cross-examination that changed the situation or the speculating which prevailed at the close of plaintiff's case.

The statement of the case contained in this opinion is the substance of the entire testimony, both for plaintiff and defendant. The case was submitted to the jury which returned its verdict in favor of Tesley and against

all the defendants in the amounts hereinbefore indicated and a further verdict in favor of the Brineys against Johns on his cross complaint. Johns filed a motion for new trial containing in substance the points hereinbefore set out, which was overruled and judgment was entered on the verdict.

A careful study and appraisal of every word of the testimony offered on behalf of plaintiff convincingly supports the trial court's statement at the close of plaintiff's case to the effect that there is no evidence of any negligence on the part of Johns, and we again say the trial court should have directed a verdict on Johns' motion and in his favor, and against the Brineys on his cross complaint, reserving the right for the question of the amount of damage to be determined by the jury. However, the court allowed the case to be reopened; no further convincing evidence was produced against Johns. Why the trial court did not again sustain the renewed motion for directed verdict is not indicated, and, after requiring defendant to proceed with his defense, we are fully satisfied from the testimony of the defense that the original position of the trial court was right, and that it was error to not then sustain the renewed motion for directed verdict.

The attempted proof of plaintiff's claim for damages against Johns for personal injuries and property damage is based solely and entirely on speculation, as was well stated by the trial court, and it is needless to say that judgments must rest on firmer ground than that of speculation. If all the speculative testimony in the case is considered in the light most unfavorable to Johns, that is, assuming that his car did hit the rear of the Tesley car, it still is no proof of negligence. The fact that there was an accident does not prove that Johns did not have his car under reasonable and proper control under all the circumstances, and further, there is positively no evidence that Tesley was in his car if Johns did hit it, or that Johns' car otherwise struck Tesley's person.

Under such circumstances, no judgment in favor of Tesley against Johns should be sustained. The record in no way supports any theory other than that Tesley's personal injuries and property damage were caused by the first collision with the Briney car as the result of the proven and admitted negligence of Briney, Jr.

After our careful study of the record we conclude, and hold, that other alleged errors involving the denial of the admission of offered testimony, the giving and refusal of certain instructions, and the submission of one form of verdict permitting recovery against Johns alone, climaxed the aura of speculation prevailing throughout the trial. To discuss these errors would needlessly and unduly lengthen this opinion.

On first thought it might appear that we are substituting our opinion for that of the jury on disputed questions of fact; however, that is not the case here, because there is no disputed fact as to the Johns vehicle not having struck Tesley or Tesley's automobile, neither is there any disputed fact as to any negligence on Johns' part even if he did strike the Tesley car, but there is positive and direct undisputed testimony that his automobile did not hit Tesley or Tesley's car, and that he was doing all that could be expected of him in face of the sudden emergency; therefore, even if it was not error on the court's part in persistently denying Johns' motion for a directed verdict, then we say that the verdict is not supported by the evidence, and conclude by ruling that the judgment against Johns, plaintiff in error, be reversed and the cause remanded with directions to the trial court to set aside the judgment as to Johns, and direct a verdict in favor of Johns against Briney, Jr., and Briney, Sr., on Johns' cross complaint, and submit the question of the amount of damage to a jury.